IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>ACUSHNET COMPANY,<br><br>        Defendant. | Civil Action No. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

For its Complaint, Plaintiff Callaway Golf Company ("Callaway Golf") alleges:

**PARTIES**

1. Callaway Golf is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Carlsbad, California.

2. Callaway Golf is the parent company of Callaway Golf Ball Operations formerly known as The Top-Flite Golf Company ("Top-Flite"), which is a wholly-owned subsidiary of Callaway Golf and a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Chicopee, Massachusetts.

3. Defendant Acushnet Company ("Acushnet") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Fairhaven, Massachusetts.

4. Acushnet is a wholly-owned operating company of Fortune Brands, Inc. ("Fortune Brands").

5. Fortune Brands, upon information and belief, is a publicly-traded corporation

organized and existing under the laws of the State of Delaware, having a principal place of business in Deerfield, Illinois.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Acushnet is subject to personal jurisdiction in this District because, upon information and belief, Acushnet is a Delaware corporation and is doing and has done substantial business in this District, including business relating to the sale and distribution for sale of the infringing products as described below.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

9. Callaway Golf is the owner, by assignment, of United States Patent Nos. 6,210,293, 6,503,156, 6,506,130 and 6,595,873 (the "'293, '156, '130 and '873 patents" respectively, or the "Sullivan I patents").

10. Callaway Golf is the owner, by assignment, of United States Patent Nos. 6,495,633 and 6,623,381 (the "'633 and '381 patents" respectively, or the "Sullivan II patents").

## RELEVANT BACKGROUND

11. Callaway Golf is a direct competitor of Acushnet in the sale and distribution for sale of golf products, including but not limited to golf balls in this district, throughout the United States, and throughout the world.

12. In 2003, Callaway Golf acquired the intellectual property assets of Top-Flite's predecessor-in-interest, then also known as "The Top-Flite Golf Company," and before that as

"Spalding Sports Worldwide, Inc." ("Spalding"). Spalding had also been a direct competitor of Acushnet with respect to golf products, including golf balls. For many years Spalding was the number two manufacturer of golf balls based on units sold and a vigorous competitor against Acushnet.

13. Golf ball manufacturers had for years sought the "Holy Grail" of golf balls—a golf ball that had, among other things, both long distance off the tee as well as good feel and spin around the greens.

14. Among the assets Callaway Golf acquired from Spalding was a family of patents that cover a unique blend of materials and properties for high performance golf balls (collectively "the Sullivan patents," including the Sullivan I and Sullivan II patents).

15. The Sullivan patents disclose technological breakthroughs relating to golf ball construction, particularly the use of a thin, soft polyurethane outer cover on an ionomer-based multi-layer solid-core golf ball. The technology disclosed in the Sullivan patents revolutionized the game of golf. Golf balls embodying this technology enjoy superior performance that had previously eluded the industry and are considered the long-sought Holy Grail of golf balls based on numerous measures, including sales, use by professionals, and critical acclaim amongst the golf media.

16. Within two years of the introduction of golf balls embodying the Sullivan patents, the vast majority of professional golfers on the PGA Tour, and other tours, had switched from traditional wound golf ball constructions—which had been predominantly used by professionals for many decades—to those incorporating the new Sullivan technology. Some commentators

noted that the technology in the Sullivan patents has done more to change the game of golf than any other equipment advance in the history of the game.

17. Golf balls utilizing the patented technology offer superior performance, including longer distance off the tee, better feel and spin around the green, and improved durability, compared to prior art golf balls.

18. Callaway Golf and Top-Flite have both had success selling golf balls which embody the fundamental golf ball construction taught in the Sullivan patents, including the Callaway Golf Rule 35®, CTU 30, HX® series, and Tour i® series of golf balls, as well as the Ben Hogan® line of golf balls, among others.

19. When the Callaway Golf Rule 35 golf ball was first released in 2000, it made a "big splash," by being the winning ball in one of the first professional golf tournaments in 2000.

20. Players under contract with another golf ball company, including all those players under contract with Acushnet/Titleist at the time, were not at liberty to play the Rule 35 ball when it was released in early 2000, unless they were willing to break their contractual relationship and switch.

21. Acushnet makes golf balls under the Titleist® brand, among others. Acushnet sells Titleist brand golf balls in this district, throughout the rest of the United States and throughout much of the world.

22. Acushnet's Titleist brand is referred to by Acushnet in its advertisements, publications and other publicly available information as "The #1 ball in golf."

23. On information and belief, Acushnet has used the slogan "The #1 ball in golf" to

promote its full range of Titleist brand golf balls for at least two decades, due in part to the number of golf tour professionals and other golf professionals who use and/or play with Titleist golf ball products. On information and belief, Acushnet's Titleist branded balls are currently the leading golf balls for professional use, having the highest percentage of golf balls played on tour both worldwide and in the United States.

24. On information and belief, Acushnet's ability to maintain golf tour professionals and other golf professionals playing its Titleist golf ball products is directly related to Acushnet's ability to offer those tour professionals golf ball products that offer at least similar performance characteristics as competitors' best balls in the marketplace. If Acushnet cannot offer golf ball products that perform like a competitor's golf ball products, including Callaway Golf's golf ball products, then golf professionals will not renew their contracts with Acushnet to use or play Acushnet's golf ball products, including the Titleist brand of golf balls. Professional golfers will not play a ball which puts them at a competitive disadvantage.

25. On information and belief, Acushnet uses its high share of golf tour professionals and other golf professionals playing its Titleist golf ball products to maintain its share of sales in the overall golf ball market both in the United States and abroad, through what Titleist calls "the pyramid of influence." The pyramid of influence is a marketing strategy premised upon the assumption that the equipment choices of professional golfers influence the purchasing decisions of club professionals, avid golfers, recreational golfers, and, of course, beginner golfers who form the base of the pyramid of influence.

26. Prior to October 2000, the vast majority of tour professional golfers, including

those playing a Titleist golf ball product, were playing a "wound" ball like the Titleist Professional or Tour Prestige.

27. On information and belief, in response to Callaway Golf's launch of the Rule 35 golf ball, Acushnet quickly scrambled to release golf ball products of similar construction. Indeed, according to at least one industry executive, "Titleist officials were particularly impressed with the new Callaway Golf Rule 35 golf ball, and they told the research and development team [at Acushnet/Titleist] to come up with something better in very short order."

28. In October 2000, Acushnet rushed the release of the Titleist Pro V1® to tour professionals in direct response to the Callaway Golf Rule 35 golf ball. By offering the Pro V1 golf ball to tour professionals, Acushnet was able to keep the majority of its contract tour professionals, preventing those players from switching to a competitive ball, like the Callaway Golf Rule 35 golf ball.

29. According to Acushnet, forty-seven players switched from a Titleist wound ball to the Pro V1 in the first week it was introduced to tour professionals. Had the Pro V1 golf ball not been offered to them, some of those tour professionals would have switched to the Callaway Golf Rule 35 golf ball.

30. Based on the success of the Titleist Pro V1 with tour professionals, Acushnet subsequently accelerated its commercial launch of the Pro V1 and introduced the Titleist Pro V1x™, and Titleist Pro V1*™ (collectively "the Pro V1 balls").

31. After the introduction of the Pro V1 balls, Acushnet's U.S. market share increased from 44.5% in 1999 to approximately 50.7% in 2006 despite the entry of other golf companies


offering premium golf balls including Callaway Golf, Nike Golf, TaylorMade-Adidas Golf, and others. Based on publicly available data Callaway Golf is informed and believes that Acushnet has sold almost $2 billion worth of Pro V1 balls and that Acushnet continues to sell Pro V1 balls at a rate in excess of approximately $300 million per year.

32.     Acushnet touts the Pro V1 balls as the best selling golf balls of all time.

33.     Wally Uihlein, Acushnet's chairman and CEO, has publicly stated that "the Pro V1 saved the company."

## PRIOR LITIGATION

34.     In prior litigation, Titleist admitted in this Court that all of its Pro V1 golf balls sold from 2000 to September 2008 infringed the technology claimed in the Sullivan I patents.

35.     The prior litigation began after an extensive mediation process required by a settlement agreement between the parties. On February 9, 2006 Callaway Golf filed the prior suit here in the District of Delaware, *Callaway Golf Company v. Acushnet Company*, C.A. No. 06-091 (SLR), accusing Acushnet's line of Titleist Pro V1 golf balls of patent infringement.

36.     Specifically, in the prior case, Callaway Golf asserted that Acushnet's Pro V1 family of golf balls, including the Pro V1 and Pro V1x lines, infringed the Sullivan I patents.

37.     On December 3, 2007, the eve of trial, Acushnet made the admission that its line of Pro V1 and Pro V1x golf balls infringed the asserted claims of the Sullivan I patents.

38.     A jury trial then followed. On December 14, 2007, the jury found that eight of the nine asserted claims from the Sullivan I patents were valid, thereby making Acushnet liable for its patent infringement. The Court entered judgment against Acushnet on December 20, 2007.

39. Following the jury verdict in Callaway Golf's favor, Callaway Golf filed a motion seeking a permanent injunction barring Acushnet from selling the infringing line of Pro V1 golf balls. Acushnet filed post-trial motions seeking a new trial and a ruling overturning the jury's verdict. Acushnet also filed a motion seeking to stay any injunction that the Court might enter.

40. On November 10, 2008, the Court issued an Order granting Callaway Golf's request that Acushnet's line of infringing Pro V1 golf balls, including the Pro V1 and Pro V1x golf balls, be enjoined and denying Acushnet's requests to overturn the jury's verdict and stay the injunction.

41. Specifically the Court Ordered with respect to the injunction:

> 1. Pursuant to 35 U.S.C. § 283, Acushnet and its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them, including any affiliated entities, during the term of the patents-in-suit (U.S. Patent Nos. 6,210,293; 6,503,156; 6,506,130; and 6,595,873), are hereby ENJOINED and RESTRAINED from infringing and from inducing, contributing to, or otherwise causing the infringement of the Relevant Patent Claims by making, using, selling, or offering to sell in the United States, or importing into the United States, or by inducing, contributing to, or otherwise causing the performance of any such activities by third parties with regard to, any of the Pro V1® line of golf balls including the Pro V1®, Pro V1x®, Pro V1*®, or any variations thereof not more than colorably different (collectively "the Pro V1® products").
>
> 2. Acushnet's professional golfers currently under contract are permitted to play Pro V1® products through the end of the 2008 calendar year.

42. On November 19, 2008 Acushnet filed a Notice of Appeal and also filed a motion with the United States Court of Appeals for the Federal Circuit seeking to stay the permanent

injunction pending appeal.

43. On December 23, 2008 the Federal Circuit issued an order denying Acushnet's request that the permanent injunction be stayed pending appeal. The Federal Circuit further noted as one of its reasons for denying the stay that "… Acushnet has not demonstrated a strong likelihood of success [for its forthcoming appeal] in its motion papers."

44. Despite admitting that its line of Pro V1 golf balls made prior to September 2008 infringe Callaway Golf's patents, Acushnet has repeatedly made misleading statements concerning the nature of its golf balls, including the following:

  a. "The [Callaway Golf] patents at issue are directed to multi-layer, solid construction golf balls with urethane covers. Acushnet received its first patent covering this technology on March 3, 1999. The oldest of the Callaway patents being asserted was not filed until December 12, 1999 and issued on March 15, 2001. The other three patents were all filed in 2001, well after the Titleist Pro V1 was introduced at the Invensys Classic on October 12, 2000." This statement falsely implies that Acushnet was the first to patent the "Holy Grail" of golf ball technology that has made the Titleist Pro V1 "the best selling golf balls of all time." In truth, Acushnet knows that Sullivan conceived of his inventions years before Acushnet developed the Pro V1 golf ball, and Acushnet itself conceded that the priority filing date for all of the four Sullivan I patents was no later than 1995.

  b. "One [Acushnet] patent directly related to the Pro V1 was issued in 1999, before

9

Spalding's 1999 application that led to a patent in 2001." Again, this statement falsely implies that Acushnet was the first to patent the "Holy Grail" of golf ball technology that has made the Titleist Pro V1 "the best selling golf balls of all time." The relevant Acushnet patent application was not filed until 1997, years after the 1995 patent applications which led directly to the Sullivan I patents.

c. The litigation between Callaway Golf and Acushnet "relates to patents that were issued by the U.S. Patent and Trademark Office after the Pro V1 came into the market and became the best-selling ball in golf." This statement falsely implies that the Sullivan I patents came after Acushnet's Pro V1, yet Acushnet itself knows and has conceded in Court filings that the Sullivan I patents were filed years before the Pro V1 came into the market.

d. "With the Pro V1 and Pro V1x, players no longer have to trade-off distance and durability for spin, feel and control around the green." This statement falsely implies that Acushnet was the first to invent the "Holy Grail" golf ball with great distance and great control, and that the Titleist Pro V1 is that very ball. Yet, Acushnet knows and has admitted that Mr. Sullivan conceived of his patented golf ball long before the release of the Pro V1, and that Callaway Golf's own Rule 35 golf balls embodying that invention were in fact commercially introduced before the Titleist Pro V1 products.

45. Further, Acushnet's parent company, Fortune Brands, Inc., told industry analysts in an earnings conference call on January 28, 2008—a month after the jury found that the

Sullivan patents infringed by Acushnet are not invalid—that Acushnet had a "very strong case" in part because "the golf ball [i.e., the Pro V1 line of golf balls] actually was out being sold before these [Sullivan] patents were issued." This statement, by Acushnet's parent, again falsely implied that Acushnet was the first to invent the "Holy Grail" golf ball with great distance and great control and that the Titleist Pro V1 is that ball, when Acushnet knows otherwise.

46. Moreover, since the injunction order against the Titleist Pro V1 line of golf balls was issued in November 2008, Acushnet has made additional misleading statements, including but not limited to its statement that "Titleist Pro V1® golf balls are the product of technology developed and accumulated by Acushnet over the past 20 years, and over 65 Acushnet Company patents are related to the Pro V1® family." This ignored Acushnet's continued and willful infringement of Callaway Golf's Sullivan I patents, and that it was those Callaway Golf patents that were key to Acushnet's ability to manufacture and sell a ball that performed as well as competitive offerings from Callaway Golf and others.

47. Acushnet has also made multiple public statements questioning the validity of the Sullivan I patents and the revolutionary technology taught therein. Acushnet's public statements about the Sullivan I patents' validity stand in contrast to the sworn testimony of its own witness that the idea of a 3-piece ball with a thin polyurethane cover was truly novel and inventive at the relevant time.

48. At the December, 2007 trial, William Morgan, Acushnet's Senior Vice President for Research and Development for golf balls, testified about his involvement in the Veneer project, Acushnet's effort to create a 3-piece ball with a polyurethane cover. At the time of

Acushnet's Veneer project, Mr. Morgan had known of the use of thin polyurethane covers, such as cast thermoset polyurethane and was also aware of solid multi-layered balls. Yet, Mr. Morgan said that as of the Veneer project—which began *after* Mr. Sullivan's work—Mr. Morgan had never heard of anyone making a solid multilayer ball with a thin polyurethane cover, and he agreed that such a ball was a new idea at the time.

49. In fact, Mr. Morgan thought a 3-piece ball with a thin polyurethane cover was such a novel development that he submitted an invention record for the idea in April of 1996, along with fellow golf ball designers Dean Snell and Ed Hebert. Acushnet believed so strongly that this idea was inventive that the company filed a patent application based on that invention disclosure, eventually resulting in U.S. Patent No. 5,885,172.

50. Acushnet only changed its tune years later, when it learned that Mr. Sullivan, and not Acushnet's developers, was the first and true inventor of this revolutionary approach to golf ball design. Acushnet now issues frequent public statements attacking the validity of the technology that previously Acushnet swore was new and patentable.

51. Acushnet has intentionally and willfully misled golf professionals, golf shops, golf consumers and the public at large regarding the origin of the technology responsible for the success of its Pro V1. It has willfully made statements that fail to disclose that the most significant performance improvement of its Titleist Pro V1 golf balls—the combination of great distance and durability combined with great control which is enabled by the breakthrough construction of a thin, soft polyurethane cover used as part of a solid-core multi-layer ball—is claimed and covered by valid Callaway Golf patents. Instead, Acushnet has continued to state

that it is the "industry leader" in golf ball design, despite its deliberate infringement of Callaway Golf patents, including the Sullivan I patents.

52.     On information and belief, Acushnet's ability to retain the golf professionals as users and promoters of its Titleist branded golf balls, through the release of the infringing Titleist Pro V1, has supported the sales and success of Titleist's golf products generally, including its other golf ball products, as a result of the "pyramid of influence."

### THE "CONVERTED" 2007 AND NEW 2009 PRO V1 LINE OF GOLF BALLS

53.     Even before the Court issued its permanent injunction, Acushnet modified the composition of its commercially successful Pro V1 and Pro V1x lines of golf balls to prepare for issuance of an injunction by the Court. Specifically, Acushnet modified the 2007 Pro V1 line of golf balls. Acushnet refers to these modified golf balls as "converted" golf balls.

54.     Although it changed the composition of its 2007 Pro V1 line of golf balls, Acushnet continued to make and sell golf balls under the Titleist Pro V1 and Pro V1x model names without changing the side stamp identification of the golf balls, calling them the best selling golf balls of all time and "The #1 Ball in Golf." Yet, the changed formulation was different from what had been historically sold as a Pro V1 golf ball. It was the prior, infringing, versions of Pro V1 golf balls that had achieved success historically, not the "converted" Pro V1 golf balls.

55.     Acushnet has represented, to the public and this Court, that its converted 2007 and new 2009 lines of Pro V1 golf balls do not infringe Callaway Golf's patents.

56.     Like its launch of the original infringing Pro V1 in 2000, Acushnet has persuaded

Case 1:09-cv-00131-SLR -MPT   Document 1   Filed 03/03/09   Page 14 of 17 PageID #: 14

professional golfers to adopt the 2009 version of the Pro V1 and Pro V1x golf balls, proclaiming that Titleist is again "#1 from the start" based on use of its Pro V1 golf balls on the PGA Tour in 2009. Callaway Golf, however, has determined that both the "converted" 2007 line of Pro V1 golf balls and the new 2009 golf balls infringe the Sullivan II patents.

57.     Acushnet has sold converted 2007 Titleist Pro V1 and Pro V1x balls and is currently marketing, making, and selling 2009 versions of the Titleist Pro V1 and Pro V1x balls.

### COUNT I - INFRINGEMENT OF THE '633 PATENT

58.     Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 57 as if fully set forth herein.

59.     Callaway Golf is the owner by assignment of United States Patent No. 6,495,633 B1, entitled "Dual core for golf balls" ("the '633 patent"), which was duly and legally issued by the United States Patent and Trademark Office on December 17, 2002. A copy of the '633 patent is attached as Exhibit A to this Complaint. The named inventors are Michael J. Sullivan and R. Dennis Nesbitt.

60.     Acushnet has infringed directly, by inducement, and/or contributorily one or more claims of the '633 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its converted 2007 and new 2009 Pro V1x golf balls.

61.     Acushnet has and has had actual notice of the '633 patent and/or constructive notice of the '633 patent pursuant to 35 U.S.C. § 287(a).

62.     Acushnet's infringement of the '633 patent has been and continues to be willful.

## COUNT II - INFRINGEMENT OF THE '381 PATENT

63. Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 57 as if fully set forth herein.

64. Callaway Golf is the owner by assignment of United States Patent No. 6,623,381 B2, entitled "Multi-layer golf ball" ("the '381 patent"), which was duly and legally issued by the United States Patent and Trademark Office on September 23, 2003. A copy of the '381 patent is attached as Exhibit B to this Complaint. The named inventor is Michael J. Sullivan.

65. Acushnet has infringed directly, by inducement, and/or contributorily one or more claims of the '381 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its converted 2007 and new 2009 Pro V1 and Pro V1x golf balls.

66. Acushnet has and has had actual notice of the '381 patent and/or constructive notice of the '381 patent pursuant to 35 U.S.C. § 287(a).

67. Acushnet's infringement of the '381 patent has been and continues to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Callaway Golf prays:

1. That this Court enjoin and restrain Acushnet, and its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them, including any affiliated entities, during the term of the patents-in-suit (the '633 and '381 patents), from infringing and from inducing, contributing to, or otherwise causing the infringement of the

patents-in-suit by making, using, selling, or offering to sell in the United States, or importing into the United States, or by inducing, contributing to, or otherwise causing the performance of any such activities by third parties with regard to, any of the Pro V1 line of golf balls including the converted 2007 and the 2009 Pro V1 and Pro V1x golf balls, or any variations thereof not more than colorably different.

     2.     For judgment against Acushnet as to infringement of the '633 patent;

     3.     For judgment against Acushnet as to infringement of the '381 patent;

     4.     That this Court award Callaway Golf its damages resulting from Acushnet's infringement, including lost profits;

     5.     That this Court award Callaway Golf treble damages as a result of Acushnet's willful misconduct;

     6.     That this Court declare this case an exceptional case pursuant to 35 U.S.C. § 285;

     7.     For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales; and

     8.     That this Court award Callaway Golf its costs and attorneys' fees and such other relief as is just.

## JURY DEMAND

Callaway Golf demands trial by jury.

|  |  |  |
|---|---|---|
|  |  | **FISH & RICHARDSON P.C.** |
| Date: March _3_, 2009 | By: | _/s/ *Thomas L. Halkowski*_<br>Thomas L. Halkowski (#4099)<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>(302) 778-8407 Telephone<br>(302) 652-0607 Facsimile |

Of Counsel:

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Michael J. Kane
3300 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
612-335-5070 Telephone
612-288-9696 Facsimile

Roger A. Denning
John W. Thornburgh
Jennifer K. Bush
12290 El Camino Real
San Diego, CA 92130
(858) 678-5070 Telephone
(858) 678-5099 Facsimile


Attorneys for Plaintiff
Callaway Golf Company