

**Potter
Anderson
& Corroon** LLP

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6026 Direct Phone
302 658-1192 Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

November 10, 2010

## VIA ELECTRONIC MAIL

The Honorable Mary Pat Thynge
United States Magistrate Judge
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

    Re:    *Acushnet Co. v. Callaway Golf Co.* - C.A. No. 09-130-SLR-MPT
           *Callaway Golf Co. v. Acushnet Co.* - C.A. No. 09-131-SLR-MPT

Dear Magistrate Judge Thynge:

    Acushnet Company ("Acushnet") submits this letter in response to Callaway Golf Company's ("Callaway") November 9, 2010 letter regarding Callaway's subpoena to the United States Golf Association ("USGA").

    Callaway claims that it needs the USGA's aerodynamic testing data of golf balls prior to January 2003 in order to "establish the scope and content of the prior art, as well as to identify golf balls that may invalidate Acushnet's patents." November 9, 2010 Letter to Judge Thynge from Halkowski.

    It is Acushnet's understanding that Callaway has failed to narrow its request for golf ball testing in any significant way, insisting on access to *all* USGA golf ball aerodynamic testing prior to 2003. In other words, Callaway has made no effort to identify which golf balls tested by the USGA were commercially available and would constitute prior art, let alone which alleged prior art golf balls might be relevant to Acushnet's patents. Acushnet respectfully requests that the court consider the following two comments regarding Callaway's approach to this subpoena.

    First, Callaway has not exhausted the discovery available to it from other sources. Callaway served document requests on Acushnet seeking all aerodynamic testing from its databases. Acushnet has long had a practice of testing certain aerodynamic properties of golf balls, including commercial Acushnet balls, commercial balls sold by other companies, and prototype Acushnet balls. Despite its objections to the overbreadth of Callaway's request, Acushnet agreed to produce its aerodynamic testing data of all commercialized Acushnet and competitor golf balls from 2005 and earlier to Callaway even though the Acushnet patents at issue date back to January 2003. This data comprises hundreds of individual tests of commercialized golf balls. Acushnet completed its production of such data on October 12, 2010.

The Honorable Mary Pat Thynge
November 10, 2010
Page 2

Callaway served its subpoena on the USGA on September 15, 2010. Despite receiving a substantial volume of aerodynamic testing data for commercial balls from Acushnet a month later, Callaway has apparently not narrowed its requests to the USGA in any way. For example, Callaway has apparently made no effort to identify specific golf balls or types of golf balls that might be relevant to its requests, such that the amount of confidential information disclosed by the USGA would be limited.

Second, as a company that routinely submits prototype products to the USGA for testing and evaluation in confidence, Acushnet is concerned about the impact of Callaway's subpoena on the golf ball industry. All golf ball manufacturers—including Callaway and Acushnet— submit many prototype golf balls to the USGA for conformance testing, including many prototypes that are never commercialized or used publicly. Both the USGA and the manufacturers have a strong interest in ensuring that their submissions will be kept in confidence and that they will not be scrutinized by competitors and their hired industry experts.

In this case, Acushnet and Callaway negotiated the protective order that governs the treatment of confidential information. Indeed, Acushnet provided its own testing data to Callaway subject to the terms of that protective order. On the other hand, Acushnet's and Callaway's competitors did not participate in negotiating the protective order, nor did they approve the parties' aerodynamic experts, who generally work as consultants in the field and would have access to the data obtained from Callaway's subpoena. Permitting the sort of broad, unfocused fishing expedition into the USGA testing database that Callaway seeks can create a serious detrimental effect on golf ball development. If golf ball manufacturers know that test data related to their prototype balls can be obtained with no showing of a particularized need and no prior consent, it will discourage golf ball manufacturers from submitting prototype products to the USGA for conformance testing, seriously undermining one of the primary functions of the USGA in golf ball development.

Moreover, since the USGA keeps its aerodynamic testing confidential, it is not prior art unless the testing relates to a ball that was ultimately sold or used publicly. Thus, the only potentially relevant USGA testing data would be for commercial balls or balls publicly used. Callaway can obtain data about such commercial balls directly from golf ball manufacturers without compromising the integrity of the USGA conformance testing process. In addition, the golf ball manufacturers, not the USGA, would know which balls were ultimately commercialized or publicly used and thus might qualify as prior art. Since Callaway has already been provided substantial aerodynamic testing data on a broad range of commercial golf balls sold before 2005, Callaway should be at least required to narrowly focus its requests on the USGA to commercial products that could be considered prior art and, more particularly, the list of commercial golf balls that Callaway can identify as having a substantial likelihood of being relevant to this action.

The Honorable Mary Pat Thynge
November 10, 2010
Page 3

Respectfully,

/s/ *Richard L. Horwitz*

Richard L. Horwitz

RLH:nmt/989065/30030-001

cc: Clerk of Court (via hand delivery)
Counsel of Record (via email)