**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-130-SLR/MPT |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 09-131-SLR/MPT |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ACUSHNET COMPANY'S NOTICE OF DEPOSITION DIRECTED TO**
**CALLAWAY GOLF COMPANY PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 26 and 30, Acushnet Company ("Acushnet") will take the deposition upon oral examination of Callaway Golf Company ("Callaway") before an authorized court reporter commencing at 9:00 A.M. on January 26, 2010 at the offices of Howrey LLP, 1299 Pennsylvania Avenue, N.W., Washington, D.C. 20004, or at such other time and place as agreed by the parties. The deposition will continue from day to day until completed, excluding weekends and holidays, shall be transcribed, and will be videotaped. This deposition is taken both for purposes of discovery and for the use as evidence at trial.

In accordance with Fed. R. Civ. P. 30(b)(6), Callaway shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf concerning the matters set forth in Attachment A.

OF COUNSEL:

Henry Bunsow
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
Tel: (415) 848-4900

Brian A. Rosenthal
Clinton H. Brannon
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated:   December 22, 2010
994562 / 30030-001

POTTER ANDERSON & CORROON LLP

By:    _/s/ David E. Moore_____
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 North Market Street
       Wilmington, DE 19801
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Counsel for Acushnet Company*

# ATTACHMENT A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice of Deposition is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

# DEFINITIONS

The definitions set forth in Acushnet's First Set of Requests for the Production of Documents and Things to Callaway Golf Company dated August 3, 2009 and Acushnet's First Set of Interrogatories to Callaway dated August 3, 2009 are hereby incorporated by reference.

1.     "Callaway" means Callaway Golf Company, and any parent, subsidiary, partner (including general and limited partners), member and/or affiliated entities, past or present, of Callaway, and any person or entity, past or present, acting on behalf of Callaway, including each of its present officers, executives, general partners, limited partners, directors, employees, attorneys, agents, and/or representatives.  The term "Callaway" shall include all predecessors and successors in interest to all or any portion of its golf ball-related business, including, without limitation, the Top-Flite Golf Company.

2.     "Spalding" means Spalding Sports Worldwide, Inc., and any parent, subsidiary, partner (including general and limited partners), member and/or affiliated entities, past or present, of Spalding, and any person or entity, past or present, acting on behalf of Spalding, including each of its present officers, executives, general partners, limited partners, directors, employees, attorneys, agents, and/or representatives.  The term "Spalding" shall include all predecessors and successors in interest to all or any portion of its golf ball-related business, including, without limitation, the Top-Flite Golf Company.

3.     "Acushnet Patents" and "Acushnet Patents-in-Suit" shall be synonymous and shall

mean the patents that Acushnet alleges in its Complaint that Callaway has infringed and continues to infringe, namely:

United States Patent No. 6,913,547 ("the '547 patent");

United States Patent No. 7,255,656 ("the '656 patent");

United States Patent No. 7,226,369 ("the '369 patent");

United States Patent No. 6,945,880 ("the '880 patent");

United States Patent No. 7,473,195 ("the '195 patent");

United States Patent No. 7,491,137 ("the '137 patent");

United States Patent No. 7,455,601 ("the '601 patent");

United States Patent No. 6,180,040 ("the '040 patent").

4.    "Callaway Patents" and "Callaway Patents-in-Suit" shall be synonymous and shall mean the patents that Callaway alleges in its Complaint that Acushnet has infringed and continues to infringe, namely:

United States Patent No. 6,495,633 ("the '633 patent"); and

United States Patent No. 6,623,381 ("the '381 patent").

5.    The term "Prior Art" means any items listed under or described in 35 U.S.C. §§ 102 and 103, or any document, communication, or thing relating to any such item, including but not limited to publications, patents, physical devices, prototypes, uses, sales, or offers for sale, and any communications, documents, or other items evidencing any of the foregoing.

6.    The terms "Infringe" and "Infringement" mean direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement by the doctrine of equivalents.

7.    The term "Agreement" means any agreement, contract, license, memorandum of understanding, agreement in principle, understanding, ratification, authorization, arrangement,

and/or dealing whether oral or in writing.

8.    "Communication" means, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, or question by any medium, whether by written, oral, or other means, including but not limited to electronic communications and electronic mail ("e-mail").

9.    The term "Acushnet Accused Products" shall mean the 2009 Titleist® Pro VI™ and Titleist® Pro VIx™ golf balls and the Converted 2007 Titleist® Pro VI™ and Titleist® Pro VIx™ golf balls, and any other Acushnet products identified by Callaway as allegedly infringing the Callaway Patents-in-Suit.

10.    The term "Callaway Accused Product(s)" shall mean the Callaway Golf Tour i, Callaway Golf Tour ix, Callaway Tour i(z), Callaway Tour i(s), Callaway Big Bertha Diablo, Callaway Warbird Plus, Callaway HX Pearl, Callaway HX Hot Plus, Callaway HX Hot Bite, Callaway 2008 Big Bertha, and Callaway HX Hot golf balls, and any other Callaway products identified by Acushnet as allegedly infringing the Acushnet Patents-in-Suit.

11.    "Covered Product" means any product manufactured by Callaway Golf Company or Spalding, or any of Callaway's subsidiary or predecessor companies that is covered by any claim of any of the Patents-in-Suit, including but not limited to the Callaway Golf Tour i, Callaway Golf Tour ix, Callaway Tour i(z), Callaway Tour i(s), Callaway HX Tour, HX Tour 56, HX Hot, HX Pearl, CTU 30 Blue, CTU 30 Red, HX Blue, HX Red, Rule 35 Firmfeel, and Rule 35 Softfeel golfballs, as well as the Top-Flite Tour Premier, Top-Flite Tour Ace, Top-Flite TL-Tour, Ben Hogan Apex Tour Black, Ben Hogan Apex Tour Red, Ben Hogan Hawk, and Ben Hogan Tour Deep golf balls.

## TOPICS

1.   Callaway's document retention policies.

2.   Callaway's efforts to gather and produce documents and information in response to Acushnet's discovery requests, including any search for responsive electronic documents.

3.   Callaway's preservation or destruction of documents relating to this lawsuit.

4.   The location of documents relating to this lawsuit.

5.   The custodians of documents for documents produced in response to Acushnet's requests for production.

6.   An identification of Callaway's parents, subsidiaries, division, and other operations, the relationship between such entities, and Callaway's ability to gather documents from its parents, subsidiaries, divisions, and any other operations.

7.   Callaway's responses to Acushnet's interrogatories.

8.   The factual bases for the contentions and allegations set forth in Callaway's Answer to Acushnet's Amended Complaint and Callaway's Counterclaims.

9.   All relief sought by Callaway in this lawsuit.

10.   Callaway's pre-suit investigation of Acushnet's Accused Products.

11.   Callaway's knowledge of the Acushnet Accused Products and the factual bases for Callaway's allegations that such products infringe the Callaway Patents-in-Suit.

12.   All instances in which Callaway has asserted, either formally or informally, one or more of the Callaway Patents-in-Suit and related foreign counterparts against any other party, including the circumstances surrounding such instances and all communications and/or investigations related to such assertions.

13.   The prosecution of the Callaway Patents-in-Suit and related foreign counterparts.

14.    Communications between Callaway and any third party concerning Acushnet, Callaway's Patents-in-Suit, Acushnet's Patents-in-Suit, or this litigation.

15.    The date on which Callaway first learned of each of the Acushnet Patents-in-Suit, and for each of the Acushnet Patents-in-Suit, the person who first learned of each patent, the circumstances under which that person first learned of the patent, and what actions were taken in response to learning of the patent.

16.    Callaway's efforts, if any, to design around the Acushnet Patents-in-Suit.

17.    Callaway's reliance on advice of counsel, if any, in defense of Acushnet's allegations of willful infringement.

18.    The Prior Art identified by Callaway in this litigation, including the date and circumstances under which Callaway first became aware of such Prior Art and if the Prior Art was known to the inventor or prosecuting attorneys of the Callaway Patents-in-Suit before the issue date of the Callaway Patents-in-Suit.

19.    Callaway's knowledge of Prior Art that is relevant, or has been asserted by others to be relevant, to the Callaway Patents-in-Suit, including the date and circumstances under which Callaway first became aware of such Prior Art and if the Prior Art was known to the inventor or prosecuting attorneys of the Callaway Patents-in-Suit before the issue date of the Callaway Patents-in-Suit.

20.    The conception and reduction to practice of the inventions claimed, disclosed, or described in the Callaway Patents-in-Suit.

21.    All research, development, and testing of the alleged inventions disclosed, described, or claimed in the Callaway Patents-in-Suit that was performed by the inventors.

22.    Ownership and assignment rights relating to the Callaway Patents-in-Suit.

- 5 -

23.    All searches, investigations, or evaluations as to the novelty, patentability, validity,

enforceability, or scope of any claim of the Callaway Patents-in-Suit or related foreign

counterparts that have been undertaken by or on behalf of Callaway.

24.    All publications or other public disclosures by Callaway of the inventions claimed,

disclosed, or described in the Callaway Patents-in-Suit, prior to the filing date of the respective

patent applications.

25.    The problems purportedly solved by any invention disclosed, described, or claimed

in the Callaway Patents-in-Suit and any alleged advantages of these alleged inventions over the

Prior Art.

26.    All secondary indicia of nonobviousness that relate to the Callaway Patents-in-Suit

and the Acushnet Patents-in-Suit.

27.    Support for the claims of the Callaway Patents-in-Suit in the patents'

specifications.

28.    Callaway's policies and procedures for patent clearance of new products or

technologies, including Callaway's interpretation of and documents relating to such policies and

procedures.

29.    Callaway's factual basis for alleging that Acushnet has infringed any of the

Callaway Patents-in-Suit.

30.    Callaway's factual basis for alleging that the Callaway Patents-in-Suit are not

invalid.

31.    Callaway's factual basis for alleging that the Callaway Accused Products do not

infringe the Acushnet Patents-in-Suit.

32.    Callaway's factual basis for alleging the Acushnet Patents-in-Suit are invalid.

33.    Callaway's factual basis for alleging it has not willfully infringed the Acushnet

Patents-in-Suit.

34.     Callaway's factual bases for alleging that Acushnet's claims are barred by the equitable doctrines of waiver, laches, and/or estoppel.

35.     Callaway's factual bases for alleging that Acushnet's claims are barred by prosecution history estoppel and/or disclaimer.

36.     The product plan for each Callaway Accused Product.

37.     Market research conducted or commissioned by Callaway or Spalding concerning any of the Callaway Accused Products, any competing golf ball products manufactured by any person, and any other golf ball products manufactured by Callaway.

38.     All comparisons made by Callaway between the Callaway Accused Products and any other product, including the Acushnet Accused Products.

39.     The manufacturing process used to manufacture the Big Bertha Diablo, Warbird Plus, HX Pearl, HX Hot Plus, HX Hot Bite, HX Hot, 2008 Big Bertha,Tour i, Tour ix, Tour i(z), and Tour i(s) golf balls and the identity of persons involved in the development and design of the manufacturing process of these golf balls.

40.     All manufacturing guidelines, manuals, specifications, or techniques Callaway used or considered using to manufacture a golf ball dual core and the identity of persons involved in creating or implementing those manufacturing guidelines, manuals, specifications, or techniques.

41.     The market for each Callaway Accused Product including without limitation the identity of each of Callaway's competitors, each competing product, competitive strengths and weaknesses of each Callaway Accused Product and competing product, and each Callaway Accused Product's market share.

42.     The marketing of each Callaway Accused Product including pricing, promotion, and distribution strategies.

- 7 -

43.   The structure and composition of each version of the Callaway Accused Products, including without limitation the composition, Shore D hardness, Shore C hardness, moisture vapor transmission rate, deflection, compression, diameter, and specific gravity of each cover layer, core layer, and core of each Callaway Accused Product and each material or blend of materials used in each such cover layer, core layer, or core.

44.   The function and operation of Callaway's golf ball indoor test range ("ITR") and the identity of persons knowledgeable about the function and operation of Callaway's golf ball ITR.

45.   The software utilized by Callaway's ITR to determine aerodynamic characteristics of golf balls, including but not limited to coefficient of lift, coefficient of drag, coefficient of aerodynamic force, spin ratio, Reynolds Number, and coefficient of restitution.

46.   The aerodynamic characteristics of the Callaway Accused Products, including but not limited to the coefficient of lift, coefficient of drag, coefficient of aerodynamic force, spin ratio, Reynolds Number, and coefficient of restitution.

47.   Characteristics of the dimple shapes and dimple patterns of the Callaway Accused Products, including but not limited to the number, size, and shape of all the dimples on each Callaway Accused Product, and the percentage of the outer surface of each Callaway Accused Product covered by dimples.

48.   The use of DuPont™ HPF or other similar materials in golf balls.

49.   The use of DuPont™ Fusabond® or other similar materials in golf balls.

50.   The use of high acid ionomers in golf ball covers.

51.   The first use, sale, or offer for sale in the United States of any and all Callaway Accused Products.

52.   The design and development of the Callaway Accused Products, including the

identity of all individuals involved.

53.     Criticisms or customer complaints relating to the Callaway Accused Products.

54.     Callaway's first knowledge of the existence, structure, and/or function of the Acushnet Accused Products, the circumstances surrounding such knowledge, and any steps or actions taken upon learning of the Acushnet Accused Products.

55.     The identification of individuals at Callaway who are primarily responsible for the following functions and a general explanation of the duties, responsibilities, and activities of each identified person:

(a) Marketing, advertising, market research, market expectation, and forecasts for Callaway Accused Products and related products;

(b) Evaluation of competitors of Callaway, competitors' products, and comparison of competitors' products to Callaway golf balls;

(c) Licensing policies and practices;

(d) Testing and evaluation of Callaway Accused Products;

(e) Research, development, and design of Callaway Accused Products;

(f) Procurement of components used in Callaway Accused Products;

(g) Manufacturing of Callaway Accused Products;

(h) Formulation and negotiation of agreements, contracts, licenses, and understandings with suppliers of components used in Callaway Accused Products;

(i) Formulation and negotiation of agreements, contracts, and licenses;

56.     Callaway's business plans, strategic plans, sales forecasts, consumer research, demonstrations at tradeshows, financial projections, and/or market share analyses relating to the golf ball market since 2002.

57.     Identification of the customers and distributors to whom Callaway distributes or

sells each Callaway Accused Product.

58.   Callaway's efforts to compete in the golf ball market and the manner in which Callaway has promoted, marketed, and priced its golf ball products.

59.   Identification of the location(s) where each of the Callaway Accused Products are manufactured and the destinations to which the Callaway Accused Products are shipped from each of the aforementioned locations.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 22, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on December 22, 2010, the attached document was Electronically

Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

Michael J. Kane
Fish & Richardson P.C.
3300 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
kane@fr.com

Robert A. Denning
John W. Thornburgh
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
thornburgh@fr.com

W. Chad Shear
Fish & Richardson P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
shear@fr.com

Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

905975 / 30030-001